# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

IN RE:

**DOUGLAS K. SMITH, MD,**                              **Bankruptcy Case No. 21-50519-RBK**

    *Debtor.*

---

**DOUGLAS K. SMITH, MD,**

    *Appellant,*

**v.**                                                  **Case No. SA-22-CV-0086-JKP**

**MEDLEGAL SOLUTIONS INC.,**                            **(Appeal from Judgment in
                                                        Adversary Proceeding No. 21-05082-RBK)**

    *Appellee.*

### <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a consolidated appeal from an order and judgment in Adversary Proceeding No. 21-05082-RBK (AP 5082) stemming from the underlying Bankruptcy Case No. 21-50519-RBK (BK 50519). Pursuant to 28 U.S.C. § 158(a), Appellant Douglas K. Smith, MD, ("Dr. Smith" or "Appellant") appeals a contempt order dated February 10, 2022, and the final judgment of the Bankruptcy Court issued in AP 5082, after a hearing held on January 25, 2022.[1] Appellant

---

[1] The Bankruptcy Court has certified that the bankruptcy Record on Appeal ("ROA") is complete for this appeal. *See* ECF Nos. 2 (Appellant's designation complete) and 3 (Appellee's designation complete). The parties have agreed to proceed with both appeals under the ROA transmitted in this case. *See* ECF No. 19. The ROA from Appellant's designation contains nineteen attachments: (1) Appellant's Designation of Record and Statement of Issues (ECF No. 2-1); designated documents from 21-50519, including Claims 7-1 through 14-1 (ECF Nos. 2-2 through 2-10); designated documents from 20-50578 (ECF Nos. 2-11, 2-12, and 2-13); designated documents from 21-5082 (ECF Nos. 2-14, 2-18, and 2-19); and designated documents from 21-5091 (ECF No. 15), 21-5096 (ECF No. 16), and 20-5067 (ECF No. 17). The docket entry for ECF No. 2 also indicates "that the exhibits from the hearing held on 3/22/2021 in case 20-50578 Salubrio, LLC, designated by Appellant as part of the record in the current appeal, will be hand delivered to the U.S. District Court Clerk's office." Given the number of attachments with Appellant's designation, this Court will cite to his designations by the ECF docket number with appropriate page reference.

    The ROA from Appellee's designation contains four attachments: (1) Appellee's Designation of Record (ECF No. 3-1) listing the designations; (2) Designated Documents (ECF No. 3-2); (3) Transcript of June 10, 2020 hearing in 20-50578 (ECF No. 3-3); and (4) Docket Sheet (ECF No. 3-4) of the Bankruptcy Court. This Court will cite to the Designated Documents as "R." using the sequential page numbering of ECF No. 3-2. It will refer to the other filings by ECF docket number. It may also include the document number for filings in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

proceeds pro se in this appeal and has filed his brief. *See* ECF No. 21. Appellee Medlegal Solutions, Inc. ("Appellee" or "Medlegal") filed its brief contesting the merits of this appeal. *See* ECF No. 24. Appellant thereafter filed an untimely and improper reply brief, *see* ECF No. 31, that the Court struck on motion of Appellee, *see* ECF No. 38. The appeal is ready for ruling.

Having considered the issues raised in this consolidated appeal, the arguments of the parties, the relevant portions of the record, and the applicable principles of law, the Court finds no need for oral argument and, for the reasons that follow, it **AFFIRMS** the Bankruptcy Court's February 22, 2022 contempt order ("Contempt Order") and final judgment.

## I. BACKGROUND

Dr. Smith filed for personal bankruptcy on April 30, 2021, in BK 50519. *See* ECF No. 2-2 at 4. Medlegal (d/b/a Atticus Medical Billing, Inc. (hereinafter "Atticus" or "AMBI")) initiated the instant AP 5082 against Dr. Smith on July 8, 2021. *See* ECF No. 2-3 at 1, 6. It asserted claims of fraud and fraudulent inducement against Dr. Smith and sought a determination that all awarded amounts are non-dischargeable debts. *See id.* at 27-29. It also sought a declaratory judgment regarding alter ego, veil piercing, and sham to perpetuate fraud. *Id.* at 28-29. The day after initiating AP 5082, Medlegal filed a proof of claim (Claim 12) in Dr. Smith's personal bankruptcy case. *See* ECF No. 2-9 at 1-3. Dr. "Smith is the sole member of Salubrio and controls other related entities, including Musculoskeletal Imaging Consultants, LLC ('MSKIC')." *Smith v. Terry (In re Salubrio, LLC)*, No. 22-50453, 2023 WL 3143686, at *1 (5th Cir. Apr. 28, 2023) (per curiam); *accord* ECF No. 2-14 at 52 (showing Dr. Smith was sole member of Salubrio).

Medlegal's claims against Dr. Smith derive from a Lien Advance Agreement ("LAA") between it and Salubrio, LLC ("Salubrio")—a medical provider that provided services to patients involved in personal injury litigation—for which Dr. Smith was the managing member. *See* ECF No. 2-14 at 133-40. In fact, Dr. Smith maintains that this agreement is the "sole basis" of Medlegal's claim, while himself claiming that, neither he nor Medlegal were party to that agreement

and that the agreement is fraudulent, attorney-fabricated, and contains a forged signature. *See*, *e.g.*, ECF No. 21 at 11, 46.

Salubrio had filed for Chapter 11 bankruptcy as shown in Bankruptcy Case No. 20-50578-RBK (BK 50578), which had also led to Adversary Proceeding No. 20-05019-RBK (AP 5019) between Medlegal and Salubrio. *See* ECF No. 2-14 at 133 (showing case caption). BK 50578 ultimately resulted in a compromise and settlement between Medlegal and the Trustee to which Dr. Smith appealed. *See Smith v. Terry (In re Smith)*, No. 5:23-CV-0194-XR, 2024 WL 389241, at *1 (W.D. Tex. Jan. 30, 2024). After thoroughly setting out the facts, the District Court dismissed this appeal for lack of jurisdiction. *Id*. at *1-8. As relevant to this case, the District Court recognized the LAA as between Salubrio and Medlegal whereby "MedLegal advanced funds to Salubrio totaling approximately $2 million," resulting in (1) arbitration and state court proceedings against Salubrio; (2) denial of a motion seeking dismissal on grounds that Medlegal was not a party to the LAA because it "was executed on behalf of Atticus Medical Billing, Inc. ('Atticus')"; and (3) Salubrio filing for bankruptcy. *Id*. at *1-2. As reflected in the appellate record in this case, during the arbitration proceedings related to an alleged breach of the LAA, Salubrio actively participated through July 12, 2019, when it moved to dismiss on grounds that the LAA excludes the name of Medlegal and only names the doing business as, Atticus Medical Billing, Inc., thus invalidating the LAA. *See* ECF No. 2-14 at 133-35.

On October 25, 2019, Dr. Smith provided sworn deposition testimony about the LAA. *See id*. at 93-120. As part of that testimony, he conceded an intent to enter into contract between Atticus and Salubrio, while further conceding that a related Business Associate Agreement showed the agreement as between Salubrio and Medlegal dba Atticus. *Id*. at 109-13. Although Dr. Smith does not believe he signed the document presented at the deposition, *id*. at 112-13, the document reflects his signature and gives "access to patient information to a company called MedLegal Solutions, Inc., doing business as Atticus Medical Billing," *id*. at 114. Further, an email to Dr. Smith from

his employee revealed "that MedLegal Solutions, Inc. was doing business as Atticus Medical Billing." *Id*. He further conceded that Salubrio "received hundreds of thousands of dollars from MedLegal Solutions, Inc" from the contract. *Id*. at 115-16. He conceded that Salubrio gave "Power of Attorney to MedLegal Solutions, Inc., DBA Atticus Medical Billing," but he did not know that Atticus had been dissolved seven days earlier. *Id*. at 117-18. He further conceded that his "company continued in 2016 to deposit checks that were sent to it by MedLegal Solutions, Inc." *Id*. at 119. He agreed that he "continued to operate under that agreement and continued to accept all the money from MedLegal Solutions, Inc. in 2017," but he did not know that Atticus had been voluntarily dissolved. *Id*. at 120. His position was essentially that he contracted with a company that was dissolved. *Id*. Assuming the accuracy of that that position, he "got over $750,000 from a company that [he] never had a contract with." *Id*.

With respect to the Adversary Proceeding here, the Bankruptcy Court entered a scheduling order that, among other things, set a deadline for initial disclosures by the parties. When Dr. Smith failed to make such disclosures, the Bankruptcy Court granted a motion to compel on October 12, 2021, and ordered him to make the disclosures by October 28, 2021. *See* R. 6-7 and 108-09 ("First Compel Order" (Doc. 15 in AP)). Although Dr. Smith objected to providing initial disclosures on grounds that Medlegal lacked standing for its claims, *see* ECF No. 2-14 at 347-55, the Bankruptcy Court overruled such objection, *see* R. 8-9. The order overruling the objection resulted in a bankruptcy appeal that this Court dismissed for lack of jurisdiction. *See Smith v. Medlegal Solutions, Inc. (In re Smith)*, No. SA-21-CV-1047-JKP, 2023 WL 2544339, at *1 (W.D. Tex. Mar. 16, 2023). On October 28, 2021, Dr. Smith moved to dismiss the AP for lack of subject matter jurisdiction. *See* R. 2 (Dkt. Entry 22); R. 10-20 (motion to dismiss on grounds of standing).

Through three separate motions filed on November 4, 2021, Medlegal moved to compel Dr. Smith to respond to requests for production, to compel his deposition, and to hold him in contempt for failure to comply with the First Compel Order. *See* R. 2 (Dkt. Entries 26-28); R-23-

4

25 (motion to compel responses); R. 38-40 (motion to compel deposition); R. 52-54 (motion for contempt). Medlegal provided an email from Dr. Smith in which he states he objects to Medlegal's standing in his personal bankruptcy case and "will not agree to another deposition until this threshold matter is resolved." R. 141.

By four separate orders dated November 24, 2021, the Bankruptcy Court (1) found that Dr. Smith had not complied the First Compel Order and thus found him in contempt, but extended the deadline for compliance to December 3, 2021, rather than sanctioning him, *see* R. 2 (Dkt. Entry 38), 73-74, 110-11 ("First Contempt Order"); (2) compelled Dr. Smith to appear for his deposition, *see* R. 3 (Dkt. Entry 39), 75-76 ("Third Compel Order"); (3) compelled Dr. Smith to serve responses to discovery by December 3, 2021, *see* R. 3 (Dkt. Entry 40), 77-78 ("Second Compel Order"); and (4) denied Dr. Smith's motion to dismiss, *see* R. 3 (Dkt. Entry 42), R. 81-82. On December 6, 2021, the Bankruptcy Court awarded Medlegal its fees and expenses ($1,671.97) incurred in compelling Dr. Smith to make his initial disclosures. *See* R. 83-84.

On December 30, 2021, Medlegal moved to hold Dr. Smith in contempt for his failures to comply with court orders. R. 4 (Dkt. Entry 66); R. 100-07 (motion). Medlegal claimed that Dr. Smith had failed to (1) make disclosures; (2) respond to written discovery; and (3) attend his deposition, all in violation of orders of the Bankruptcy Court. *See* R. 100-02. Given these discovery violations, Medlegal sought an order striking Dr. Smith's answer and entering a default judgment. *See* R. at 103.

The Bankruptcy Court held a hearing on January 25, 2022, at which it put its findings of fact into the record and ordered Medlegal to file proposed orders related to fees incurred. *See* ECF No. 2-19 at 17-18 (Docket Sheet for AP 5082). Two days later the Bankruptcy Court entered a final judgment against Dr. Smith for actual damages of $1,480,300.89. R. 148-49. The Bankruptcy Court thereafter entered an order dated February 10, 2022 that (1) granted the motion to hold Dr. Smith in contempt for failure to comply with court orders; (2) found Dr. Smith in contempt of four

orders (Docs. 15, 38-40 in AP) issued in AP 5082; and (3) sanctioned Dr. Smith under Fed. R. Civ. P. 37(b)(2)(A)(iii) and (vi) and (d)(3) by striking his response to the complaint and entering default judgment against him. R. 150-51. That same date, the Bankruptcy Court awarded Medlegal its fees and expenses incurred in compelling Dr. Smith to respond to requests for production ($1,460.65) and appear for his deposition ($1,510.00). *See* R. 152-55. It also awarded fees and expenses ($730.12) incurred in obtaining the First Contempt Order. *See* R. 156-57. Dr. Smith appeals both the February 10, 2022 contempt order and the final judgment.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a), which provides district courts with the authority to hear appeals from final judgments and orders of bankruptcy judges. The Bankruptcy Court exercised jurisdiction over the underlying matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334 as a core proceeding as set forth in § 157(b)(2)(A), (B), (I), and (O).

"The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). "Pursuant to 28 U.S.C. § 1334, the district court has exclusive jurisdiction of all bankruptcy cases under title 11 and 'original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.'" *Wilson v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 478 (5th Cir. 2009) (quoting § 1334(b)). And § 157(b)(1) provides that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."

"On appeal, 'the burden is on the appellants to show error.'" *Edwards Family P'shp, LP v. Johnson (In re Cmty. Home Fin. Servs. Corp.)*, 32 F.4th 472, 484 (5th Cir. 2022) (quoting *Murphy v. St. Paul Fire & Marine Ins. Co.*, 314 F.2d 30, 31 (5th Cir. 1963)). "When reviewing a bankruptcy

court's decision in a 'core proceeding,' a district court functions as a[n] appellate court and applies the standard of review generally applied in federal court appeals." *First Nat'l Bank v. Crescent Elec. Supply Co.*, 713 F.3d 285, 293 (5th Cir. 2013) (quoting *Webb v. Reserve Life Ins. Co.*, 954 F.2d 1102, 1103-04 (5th Cir. 1992)). As recognized in *Webb*, "[a] core proceeding is one that invokes a substantive right provided by Title 11 [of] the Bankruptcy Code or is a proceeding that by its nature could arise only in the context of a bankruptcy case." 954 F.2d at 1103 n.1 (citation and internal quotation marks and brackets omitted); *accord In re Morrison*, 555 F.3d at 479.

Courts review a bankruptcy court's findings of fact under the clearly erroneous standard, but review questions of law de novo. *Saenz v. Gomez*, 899 F.3d 384, 390 (5th Cir. 2018); *Wiggains v. Reed*, 848 F.3d 655, 660 (5th Cir. 2017); *Thaw v. Moser*, 769 F.3d 366, 368 (5th Cir. 2014); *Whitley v. Cage*, 737 F.3d 980, 985 (5th Cir. 2013). When an "appeal is based on the bankruptcy court's application of law to undisputed facts, the de novo standard of review applies." *Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*, 739 F.3d 215, 218 (5th Cir. 2013). "Mixed questions are not all alike"; thus making "the standard of review for a mixed question [dependent] on whether answering it entails primarily legal or factual work." *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge*, LLC, 583 U.S. 387, 396 (2018).

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses." *Webb*, 954 F.2d at 1104 (quoting former Fed. R. Bankr. P. 8013).[2] "A finding of fact is clearly erroneous only if 'on the entire evidence, the court is left

---

[2] "As another court has noted, the 2014 amendments to the Federal Rules of Bankruptcy Procedure removed former Rule 8013, but '[d]espite the omission of what existed as Rule 8013 prior to December 2014, logic still compels the same conclusion with respect to the appellate powers of the District Court.'" *In re Atiyeh*, No. 21-2381, 2022 WL 970854, at *1 n.3 (E.D. Pa. Mar. 31, 2022) (quoting *In re Great Atl. & Pac. Tea Co., Inc.*, No. 14-4170, 2015 WL 6395967, at *2 n.1 (S.D.N.Y. Oct. 21, 2015)). Not only do courts continue to rely on former Rule 8013, *see, e.g.*, *Rozelle v. Autry (In re Rozelle)*, No. SA-21-CA-173-FB, 2022 WL 709022, at *1 (W.D. Tex. Jan. 31, 2022); *Silicon Hills Campus, LLC v. Tuebor REIT Sub, LLC*, No. 1:20-CV-1201-RP, 2021 WL 783554, at *2 (W.D. Tex. Mar. 1, 2021), but the provisions of the former rule are consistent with typical appellate procedure. Absent a future modification of the rules, binding precedent holding otherwise, or a persuasive opinion that alters this view regarding the

with the definite and firm conviction that a mistake has been committed.'" *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003) (quoting *Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992)).

Furthermore, on appeal, courts review a bankruptcy judge's discretionary rulings and decisions for abuse of discretion. *Rozelle v. Branscomb, PC*, Case No. 5:16-cv-01024-RCL, 2017 WL 3301511, at *2 (W.D. Tex. Jul. 31, 2017). A bankruptcy court's decision to issue a contempt order is a discretionary ruling. *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 261 (5th Cir. 2009); *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997) (relying on 11 U.S.C. § 105). Imposing sanctions in the form of striking an "answer and entering default judgment in favor of the creditors," is likewise reviewed for abuse of discretion. *See Wright v. John Deere Indust. Equip. Co. (In re Wright)*, 4 F.3d 991, 1993 WL 361139, at *1 (5th Cir. 1993) (per curiam) (unpublished opinion). "An abuse of discretion occurs" when the bankruptcy court: (1) applies an improper legal standard, which is reviewed de novo; (2) "follows improper procedures"; or (3) "rests its decision on findings of fact that are clearly erroneous." *Lejeune ex rel. Estate of Caillouet v. JFK Cap. Holdings. LLC (In re JFK Cap. Holdings, LLC)*, 880 F.3d 747, 751 (5th Cir. 2018) (quoting *Barron & Newburger, PC v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 270 (5th Cir. 2015) (en banc)).

### III. ISSUES RAISED ON APPEAL

Appellant lists thirteen issues in his designation of issues. *See* ECF No. 2-1 at 21-23. These are summarized as follows:

> 1. Whether the Bankruptcy Court erred in disregarding Appellee's burden of persuasion regarding constitutional standing to be heard in Appellant's individual bankruptcy (BK 50519)?
>
> 2. Issue duplicating Issue 1.

---

appellate procedures, this Court will continue to follow the procedures of the former rule as consistent with appellate procedure in general.

3. Whether the Bankruptcy Court erred in adjudication without subject matter jurisdiction?

4. Whether the Bankruptcy Court erred by permitting Appellee to initiate the Adversary Proceeding after failing to prosecute a prior Adversary Proceeding (20-AP-5087-RBK) for over eighteen months?

5. Whether the Bankruptcy Court erred by disregarding Nevada Revised Statute § 86.381 regarding suing members of a limited liability company ("LLC")?

6. Whether the Bankruptcy Court erred by disregarding Nevada Revised Statute § 86.371 regarding holding members of a limited liability company individually liable for debts or liabilities of the company?

7. Whether the Bankruptcy Court erred by disregarding Appellee's failure to attach evidence of a pecuniary obligation as required to consider Appellee's Claim 12?

8. Whether the Bankruptcy Court erred by permitting Appellee to submit and sustain a Non-Dischargeability claim against an LLC member without first proving a pecuniary interest in the BK 50519 estate?

9. Whether the Bankruptcy Court erred in continuing adversary proceeding against member of LLC after Trustee declared BK 50519 estate to be a fully administered, no asset Chapter 7 case?

10. Whether the Bankruptcy Court erred by continuing AP 5082 seeking 523 non-dischargeability after granting 727 non-dischargeability in BK 50519?

11. Whether the Bankruptcy Court erred by failing to adjudicate the threshold declaratory judgment removed from state court as to whether Appellee was an unnamed party to the Lien Advance Agreement?

12. Whether the Bankruptcy Court erred by entering judgment of $1.4 million against an LLC member when Appellee failed to produce evidence of any personal pecuniary or contractual obligation to the Appellee?

13. Whether the Bankruptcy Court erred by failing to consider fraud-on-the-court evidence by counsel for Appellee?

*Id.*[3]

Appellant also identifies seventeen issues in his appellate brief. *See* ECF No. 21 at 6-8

(Statement of Issues). But he

is limited to the . . . issues he designated in his Statement of Issues . . . per Federal Rule of Bankruptcy Procedure 8006, which provides that "the appellant shall file

---

[3] Appellant also listed eight issues in the member case of this consolidated action. *See* ECF No. 9-1 (Cause No. 22-CV-0159). The parties, however, agreed to proceed with both appeals under the ROA transmitted in this case, *see* ECF No. 19, which includes Appellant's statement of issues. Although that agreement was subject to potential supplementation by Appellant, he made no timely supplement to the ROA. The Court views the original statement of issues transmitted with the ROA in this case to be the relevant statement of issues. Furthermore, the eight listed issues in the member case are essentially included in the thirteen listed in the ROA of this case.

with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented."

*Smith v. Salubrio, LLC (In re Smith)*, No. 21-CV-1135-XR, 2022 WL 16825195, at *2 (W.D. Tex. Nov. 2, 2022), *aff'd sub nom. Smith v. Terry (In re Smith)*, No. 22-50999, 2023 WL 4992835 (5th Cir. Aug. 4, 2023). To the extent this Court refers to any specific issue identified in Appellant's brief, it will refer to as "Brief Issue" followed by the number of the issue.

Dissatisfied with Appellant's pro se Statement of Issues set out in his Appellate Brief, Appellee identifies three threshold issues followed by two issues related to the appellate record:

1. Whether Appellee had standing to file and prosecute AP 5082?
2. Whether the Bankruptcy Court had subject matter jurisdiction over AP 5082?
3. Whether Appellant adequately briefed any of the issues he raises on appeal?
4. Whether the Bankruptcy Court erred in entering its final judgment against Appellant?
5. Whether the Bankruptcy Court erred in entering its contempt order?

*See* ECF No. 24 at 10 (identifying the first three issues as threshold issues). Appellee addresses these five issues, *id*. at 23-34, before briefly addressing the issues listed in Appellant's Brief, *see id*. at 34-46.

In reviewing Appellant's original statement of issues in conjunction with the more simplified and streamlined issues identified by Appellee, the Court concludes that Appellee's version is better tailored for the Court's consideration. As discussed in the next section, moreover, Appellant has abandoned many of the issues he preserved for appeal in his original statement of issues. The Court will address each preserved issue that Appellant has not abandoned through his brief.

### IV. PRESERVATION OF ISSUES, WAIVER, AND ABANDONMENT

In general, issues included in an appellant's original statement of issues are properly preserved for appeal. *See Highland Cap. Mgmt. Fund Advisors, LP v. Highland Cap. Mgmt., LP (In re Highland Cap. Mgmt., LP)*, 57 F.4th 494, 499-500 (5th Cir. 2023).

Bankruptcy Rule 8009—previously Rule 8006—requires that, in an appeal to a district court or bankruptcy appellate panel, "[t]he appellant must file with the

> bankruptcy clerk and serve on the appellee a designation of the items to be included
> in the record on appeal and a statement of the issues to be presented."

*Id*. at 499 (quoting Fed. R. Bankr. P. 8009(a)(1)(A)). An issue is not preserved for appeal, "even

if [it] is argued in the bankruptcy court and ruled on by that court . . . unless the appellant includes

the issue in its statement of issues on appeal." *Id*. (quoting *Smith ex rel. McCombs v. H.D. Smith*

*Wholesale Drug Co. (In re McCombs)*, 659 F.3d 503, 510 (5th Cir. 2011)). Furthermore, even if

an unpreserved issue is "argued before the district court," it "is waived on subsequent appeal to

the Fifth Circuit." *Id*. at 500 (same). As the Fifth Circuit has

> previously held, "the rules regarding preservation of issues on appeal in bankruptcy
> cases apply with equal force regardless of whether the appeal is from the bank-
> ruptcy court to the district court . . . from the district court to the court of appeals .
> . . or from the bankruptcy court to the court of appeals"—in other words, Appel-
> lants' "statement of issues must be considered to determine whether [they] properly
> preserved for appeal the issues and arguments contained in [their] brief."

*Id*. (quoting *In re McCombs*, 659 F.3d at 511).

Additionally, a party may abandon an issue preserved for appeal by failing to brief it ade-

quately in the appellate brief. *See Assadi v. Osherow (In re Assadi)*, No. 22-50452, 2022 WL

17819599, at *2 (5th Cir. Dec. 20, 2022) (per curiam) ("Assadi abandoned this issue by inade-

quately briefing it before the district court.); *Ramirez v. Escajeda*, 921 F.3d 497, 500 (5th Cir.

2019) (recognizing that parties abandon issues "[b]y presenting but failing to brief" the issues);

*United States v. Arizpe*, 371 F. App'x 521, 522 (5th Cir. 2010) (per curiam) ("We will not raise

and discuss legal issues that Arizpe has failed to assert; those issues are deemed abandoned.");

*Saddler v. Quitman Cnty. Sch. Dist.*, 278 F. App'x 412, 416 (5th Cir. 2008) (per curiam) (deeming

an issue abandoned when the appellant "failed to raise the issue in her opening brief"); *Davis v.*

*Maggio*, 706 F.2d 568, 571 (5th Cir. 1983) ("Claims not pressed on appeal are deemed aban-

doned."). Briefing schedules arising from applicable bankruptcy rules of procedure create an ex-

pectation that "issues in bankruptcy appeals [are] to be raised and argued in appellant's brief."

*MortgageAmerica Corp. v. Bache Halsey Stuart Shields Inc.*, 789 F.2d 1146, 1150 (5th Cir. 1986).

"An original brief abandons all points not mentioned therein, and also those points assigned as error but not argued in the brief." *Id.* (quoting parenthetically *Martin v. Atl. Coast Line R.R. Co.*, 289 F.2d 414, 417 n.4 (5th Cir. 1961)).

Courts may deem issues abandoned when an appellant fails to present or properly argue issues. *Clark v. Waters*, 407 F. App'x 794, 796 (5th Cir. 2011) (per curiam). They may deem an issue abandoned for failure to properly brief it when the appellant fails to provide citations to the record. *Bailey v. U.S. Bank*, 620 F. App'x 361, 362 (5th Cir. 2015) (per curiam). A "failure to include record citations is a clear violation of the bankruptcy rules' directive that an appellant's brief contain[s] 'citations to the . . . parts of the record on which the appellant relies.'" *McCoy v. United States*, No. 3:18-CV-21, 2019 WL 1084211, at *3 (S.D. Tex. Mar. 7, 2019) (quoting Fed. R. Bankr. P. 8014(a)(8)), *aff'd sub nom. McCoy v. United States (In re McCoy)*, 810 F. App'x 315 (5th Cir. 2020) (per curiam). Such failure also violates Fed. R. Bankr. P. 8014(a)(6), which addresses the statement of the case and associated facts "with appropriate references to the record." Rule 8014(a) "governs the presentation of appellants' briefs in bankruptcy appeals," and "is not only a technical or aesthetic provision, but also has a substantive function—that of providing the other parties and the [C]ourt with some indication of which flaws in the appealed order or decision motivate the appeal." *Id.* (citation and internal quotation marks omitted).

In failing "to make the timely assertion of a right," abandonment is a form of forfeiture *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). Parties may forfeit "an argument by "raising if for the first time on appeal—or by failing to adequately brief the argument on appeal." *Id.* While forfeiture does not absolutely prohibit consideration of an issue, "appellate courts have considerable discretion in deciding whether to consider an issue that was not raised below." *Id.* at 398.

Of course, courts construe pro se briefs liberally and "apply less stringent standards to parties proceeding pro se than parties represented by counsel." *Haase v. Countrywide Home Loans,*

*Inc.*, 748 F.3d 624, 629 (5th Cir. 2014) (quoting *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir.1995)). Still, pro se litigants must reasonably comply with procedural rules regarding their appellate briefs. *Id.* Courts, however, may proceed to the merits of an appeal despite procedural deficiencies. *McCoy*, 2019 WL 1084211, at *3. Limited circumstances provide courts "discretion to consider pro se briefs that fail to comply with [procedural rules governing briefing] when doing so does not prejudice the appellee." *Bailey*, 620 F. App'x at 362 (citing *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988) (addressing merits of a noncompliant pro se brief when "well-settled law" applied, there were no "disputed facts," and the appellee fully briefed the issue)).

Appellee's third issue directly presents the adequacy of Appellant's brief. As mentioned earlier, Appellant is limited to the issues identified in his original statement of issues. Not only has he forfeited all issues not listed in that original statement, but he has also forfeited all issues that he raises for the first time on appeal. And he provides no basis for this Court to exercise its discretion to consider issues not presented to the Bankruptcy Court in the first instance.

Appellee also presents several deficiencies with Dr. Smith's pro se appellate brief: (1) not supporting factual assertions with citations to the record as required by Fed. R. Bankr. P. 8014(a)(6); (2) citing to a BK5078 Binder, which Appellee has not been able to locate in the record; (3) citing to various components of an "Ex. 9," which Appellee has been unable to locate in the record; (4) not relying on evidence introduced at the hearing on the motion for contempt; (5) making unsupported self-serving factual allegations and references in an attempt to supply so-called factual information that is not within the ROA so as to slander Appellee, its counsel, and the Bankruptcy Court. *See* ECF No. 24 at 20-22 & n.2. The first and fifth deficiencies both concern unsupported factual allegations. Factual allegations without proper support amount to no more than mere conclusion or speculation. Parties may not rely on speculative or conclusory facts. The need for proper support is even more pronounced when the party has the burden to show error. The fifth deficiency also adds an element of personal attacks which have no place in briefing.

These two deficiencies are well-taken, and the Court will not rely on unsupported factual allegations.

With respect to Deficiency 2, it seems that Appellee has overlooked physical exhibits that the Bankruptcy Court transmitted as part of the ROA in this case. *See* ECF No. 2 (docket entry reflecting that some exhibits were hand-delivered for inclusion in the ROA). A contemporaneous second docket entry states: "Received (1) Binder from Bankruptcy. Placed in file room." Appellant provided an adequate citation to this binder even though Appellee did not realize it.

Deficiency 3 likewise has a reasonable, yet less obvious, explanation—the references to Ex. 9 appear to refer to the ROA provided in the member case (Case No. 5:22-CV-0159-JKP) of this consolidated action prior to the Court's consolidation. *See* ECF No. 9 (member case with seven attachments, ECF No. 9-1 through 9-7, which Appellant seems to refer to as Exs. 9-1 through 9-7). These citations, however, are problematic for at least a couple of reasons.

First, the cited exhibits are not part of the ROA for this consolidated action. The parties agreed to proceed with this consolidated action on the ROA filed in the lead case, subject to timely supplementation should Appellant deem supplemented warranted. *See* ECF No. 19 at 1-2. Although this Court provided Appellant an opportunity to "stand by the appellate brief he filed" in the member case by "refil[ing] it in this consolidated appeal.," *id.* at 2, he did not refile it in this case. Instead, within two weeks of the consolidation order, he filed his amended consolidation brief (ECF No. 21) while noting that it amended his brief initially filed in the member case. He apparently neglected to update his cites to the agreed ROA for the consolidated action. And he did not timely supplement the ROA to include the documents he cites as various components of Ex. 9. Although the Court later received an untimely supplementation of the ROA, *see* ECF No. 28, the Court has stated that it will not consider the untimely submission, *see* ECF No. 38 at 2.

Deficiency 4 also presents problems for Appellant. Because he challenges a Contempt Order and final judgment of the Bankruptcy Court, evidence presented at the January 25, 2022

hearing is particularly relevant to this appeal. But Dr. Smith did not introduce any evidence at that hearing. Thus, although he has designated many documents for the ROA, including the BK 5078 Binder, the vast majority of the designated documents are not relevant to the issues in this appeal.

Nevertheless, Appellant has taken steps to preserve the thirteen issues he lists in his original statement of issues. But of those thirteen issues, he essentially abandons or forfeits them except to the extent he challenges the Bankruptcy Court's subject matter jurisdiction, its contempt order, and its alleged failure to consider fraud-on-the-court. Given the disparity of Appellant's original statement of issues in comparison to his brief's statement of issues, it is difficult to determine how the two sets of identified issues parallel one another. Further, Appellant only designates five documents from AP 5082 for inclusion in the ROA: (1) Medlegal's complaint used to commence AP 5082 against him (Doc. 1); (2) his original response to that complaint (Doc. 5); (3) Medlegal's motion to compel initial disclosures (Doc. 11); (4) his objection to that motion (Doc. 14); and (5) his objection to Medlegal's motion to hold him in contempt and for sanctions (Doc. 76). *See* ECF No. 2-1 at 12-13.

Issues 1, 2 (duplicate of Issue 1), and 3 directly challenge the jurisdiction of the Bankruptcy Court and are properly before this Court on appeal. Furthermore, as argued in his objection (Doc. 14) to the motion to compel, Issues 7, 8, and 9 present jurisdictional arguments. *See* ECF No. 2-14 at 350-54. Similarly, as argued in his objection (Doc. 76) to the contempt motion, Issue 10 presents a jurisdictional argument based on mootness. *See id.* at 364, 382. Additionally, Issue 12 appears to be jurisdictional as it pertains to a pecuniary or contractual obligation to Appellee.

Except as Issues 7 through 10 relate to jurisdiction, Appellant has not shown how they relate to alleged error of the Bankruptcy Court in issuing either the Contempt Order or Judgment appealed in this case. Likewise, Appellant has made no such showing as to Issues 4 through 6 or 11. Outside the jurisdictional context, Appellant has not shown that he presented these arguments to the Bankruptcy Court as it considered the contempt motion, imposed sanctions, and entered a

default judgment against him for his failures to comply with court orders. He thus forfeited these issues as to this consolidated appeal.[4]

Appellant has properly preserved and argued his jurisdictional issues. Issue 12 may also relate to a non-jurisdictional, evidentiary challenge to the Bankruptcy Court default judgment award. Appellant has also identified and briefed Issue 13 concerning alleged fraud on the court. He has otherwise abandoned the issues identified in his original statement of issues by not sufficiently briefing them. The Court will consider the preserved, non-abandoned issues through Appellee's simplified and concise statement of issues. The only issue that does not fall neatly within one of Appellee's five issues is the challenge regarding fraud on the court, which runs as a common theme throughout his brief.

Appellee also argues that Appellant has provided no basis to overturn the Contempt Order because the Bankruptcy Court granted the motion for reasons stated on the record, yet Appellant failed to designate the transcript of the hearing so that this Court can determine whether the Bankruptcy Court committed reversible error. ECF No. 24 at 11. The Court will consider this particular matter after considering jurisdictional issues.

## V. JURISDICTIONAL ISSUES

The two related jurisdictional issues require consideration at the outset—whether Medlegal had standing to file and prosecute the Adversary Proceeding and whether the Bankruptcy Court had subject matter jurisdiction over the Adversary Proceeding. Dr. Smith argues that Medlegal lacked a pecuniary interest in his bankruptcy estate, and thus lacked standing to pursue the Adversary Proceeding, causing the Bankruptcy Court to lack subject matter jurisdiction over the

---

[4] As listed in Issue 5 and argued as Issue 8 in his brief, Appellant relies on Nevada Revised Statute § 86.381. While he took steps to preserve his § 86.381 issue by listing it as Issue 5, his briefing arguments clearly reflect that he connects any error as to this statute to AP 5019, not the Adversary Proceeding leading to this consolidated appeal. *See* ECF No. 21 at 35-36. As Appellee argues, the Nevada statute has no relevancy to the Contempt Order or Judgment that are appealed in this case. *See* ECF No. 24 at 41. Appellant has not provided an adequate appellate record so as to permit this Court to find any error as to application of the Nevada statute related to issuing the Contempt Order or entering judgment against Dr. Smith as a sanction for failure to comply with court orders.

Adversary Proceeding. More precisely, he argues that "Medlegal's failure to prove standing by failing to provide a contractual agreement between the parties or perfected security agreement between Medlegal and [Dr. Smith] should have been fatal to Federal justiciability rendering *void* ALL Orders rendered by the [Bankruptcy Court] without subject matter jurisdiction." ECF No. 21 at 27. The alleged issue with standing runs rampant throughout Appellant's brief and is his primary issue raised and argued in this consolidated appeal.

Constitutional standing, which is a plaintiff's personal stake in the outcome of the case, is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan*, 554 U.S. at 560-61). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 560–61; *accord*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013)).

Medlegal filed a claim in the bankruptcy case based on damages sought in the Adversary Proceeding. It has shown the existence of each element to establish that it had standing to pursue the Adversary Proceeding alleging fraud and fraudulent inducement. It has shown that it has suffered a monetary injury in fact, a sufficient causal connection between that monetary injury and the conduct complained of against Dr. Smith, and a likelihood that the monetary injury would be redressed by a favorable decision. Even though it did not provide a specific contract between it and Dr. Smith or a perfected security agreement, such failure is not fatal to Medlegal establishing standing. Based on Dr. Smith's own deposition testimony, there was (1) an existing contract between his company, Salubrio, and Atticus; (2) signed documents also showed that Medlegal was doing business as Atticus; and (3) regardless of any contract, Dr. Smith and/or his company

accepted checks from Medlegal based on the contract. Medlegal's claims for fraud, fraudulent inducement, alter ego, and non-dischargeability arise out of alleged unlawful conduct of Dr. Smith personally, rather than being incorporated into a contract.

Although Dr. Smith asserts that Medlegal lacks standing, the Court finds no basis to find a lack of standing or that the Bankruptcy Court lacked jurisdiction over the Adversary Proceeding. His view that he contracted with a company (Atticus) that was dissolved appears to be belied by his own testimony. Further, regardless of whether he contracted with Medlegal, he conceded that he took vast sums of money from Medlegal through a contract that bears his signature. The Court recognizes that Dr. Smith's claim of fraud on the court relates to the alleged validity of the contract forming the basis for Medlegal's claims against him personally, but the nature of Medlegal's claims against Dr. Smith are not contractual in nature. The alleged fraud on the court does not render Medlegal to be without standing to assert its claims. These jurisdictional issues provide no basis for reversing the judgment or Contempt Order entered against Dr. Smith.

Although Appellant presented Issue 10 as a mootness issue in his objection before the Bankruptcy Court, he does not directly argue mootness in his appellate brief. Appellant's one-sentence Issue 10 ("Whether the bankruptcy court erred by continuing AP5082 seeking 523 non-Dischargeability AFTER 727 non-Dischargeability was granted in BK519?"), falls well short of showing that that any matter raised in AP 5082 was rendered moot by court actions taken in BK 50519. Moreover, the appellate record before this Court does not support finding AP 5082 moot. Thus, the Bankruptcy Court continued to have jurisdiction to issue its Contempt Order and enter its final judgment.

Notably, the question of mootness addresses only one aspect of the relief Medlegal sought against Dr. Smith—non-dischargeability—but Medlegal also sought actual damages. Accordingly, the mootness issue would not render the Bankruptcy Court without jurisdiction to issue either its Contempt Order or its final judgment. This Court has previously discussed the "the dual concepts

of standing and mootness" and stated:

> The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness). If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot. However, an action becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.

*Ndudzi v. Castro*, No. SA-20-CV-0492-JKP, 2020 WL 3317107, at *6 (W.D. Tex. June 18, 2020) (citations and quotation marks omitted). Because at most the mootness issue affects only the declaration of non-dischargeability, no intervening circumstance deprived Medlegal of its personal stake in the outcome of AP 5082. The alleged mootness did not make it impossible for the Bankruptcy Court to grant any effectual relief to Medlegal. Dr. Smith mistakenly relies on mootness when the alleged intervening action at most rendered the requested non-dischargeability declaration unnecessary rather than eliminating the case and controversy between the parties.

In sum, this Court finds that the Bankruptcy Court had subject matter jurisdiction to issue the order and judgment appealed in this consolidated case. Neither mootness nor a lack of standing render the Bankruptcy Court without jurisdiction.

## VI. ADEQUACY OF APPELLANT'S BRIEF AND RECORD

The third threshold issue identified by Medlegal concerns the adequacy of Appellant's brief and the designated appellate record. Not only has Dr. Smith designated nearly two thousand pages of documents from various bankruptcy proceedings, most of which he does not utilize in pursuing this appeal, but he neglected to timely designate the hearing transcript directly pertinent to the Contempt Order and judgment that is the basis for this bankruptcy appeal. His amended consolidated brief, furthermore, often cites matters outside the appellate record or simply provides no citation to the ROA as designated in this consolidated appeal. The Court addressed many of the issues with Dr. Smith's appellate brief earlier but left one matter for further consideration.

"The burden of creating an adequate record rests with the appellant, who may not urge an

issue on appeal if he has failed to provide the appellate court with the requisite record excerpts." *Zer-Ilan v. Frankford (In re CPDC Inc.)*, 221 F.3d 693, 698 (5th Cir. 2000). When an "appellant intends to argue on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all relevant testimony and copies of all relevant exhibits." Fed. R. Bankr. P. 8009(b)(5). A failure to comply with this requirement may preclude a proper review of the matters on appeal and result in the district court affirming the decision of the bankruptcy court. *Alfaro v. Reiley (In re Primera Energy, LLC)*, 812 F. App'x 269, 270 (5th Cir. 2020) (per curiam).

While the Court has concerns about the adequacy of record presented to it and the adequacy of Appellant's brief, the Court has largely addressed such matters in an earlier section. At this point, the Court declines to strike the brief or summarily affirm the judgment of the Bankruptcy Court. Under the circumstances of this case, the prudent course is to consider the brief and ROA presented. The Court can address any additional deficiencies in the briefing or record as it considers the matters properly preserved and argued on appeal.

## VII. ANALYSIS

This consolidated appeal concerns a Contempt Order and a final judgment of the Bankruptcy Court issued in Adversary Proceeding No. 21-05082, after a hearing held on January 25, 2022. As recognized by Appellee's concise, streamlined statement of issues, the non-jurisdictional crux of the matter before the Court is whether the Bankruptcy Court erred in entering either the Contempt Order or the final judgment. While Appellant primarily argues jurisdictional reasons for reversing the Contempt Order and judgment, he also argues that Bankruptcy Court erred in declaring him in contempt for failing to comply with court orders. *See* ECF No. 21 at 8 (Brief Issue 17), 46-48. Notably, although it is difficult to construe any issue that Appellant lists in his original statement of issues as comparable to the definitiveness of Issue 17 of his brief, he does intertwine

fraud on the court (Issue 13) in discussing Brief Issue 17.[5] *See id*. at 46-48.

Quite frankly, Appellant has not supported his fraud-on-the-court challenge with any evidence within the appellate record. Instead, this challenge is based upon his "April 22, 2022 sworn affidavit [that] references irrefutable evidence of attorney fabrication of documents and false claims." ECF No. 21 at 46. This Court, however, struck that affidavit as outside the appellate record. *See* ECF No. 18. Appellant also often cites various components of Ex. 9, which, as the Court previously explained, is actually the ROA filed in the member case. Even if the Court were to consider the portions of the member case ROA cited to by Appellant, evidence of fraud on the court, forgery, or fabrication is simply lacking. Conclusory and speculative assertions of fact simply do not carry the day.

Appellant has presented no evidence of any fraud on the court or any forged signature. He has not carried his appellate burden to show any error regarding alleged fraud on the court, fabrication of evidence, or forged signature. He has not created an adequate appellate record to find any such fraud, fabrication, or forgery. And he has not shown how the alleged fraud impacts the appealed Contempt Order or final judgment. This Court previously rejected the argument that the alleged fraud affected the jurisdiction of the Bankruptcy Court. In short, Appellant's challenge based on fraud on the court provides no basis for this Court to find that the Bankruptcy Court erred in either issuing its Contempt Order or entering judgment against Dr. Smith.

Aside from alleged fraud on the court and jurisdictional issues, Appellant has preserved no other specific issue as to whether the Bankruptcy Court erred in issuing its Contempt Order. Nevertheless, Appellee has specifically identified such issue as relevant to this appeal. *See* ECF No. 24 at 10. It also argues that a failure of Appellant to designate a hearing transcript precludes the

---

[5] Appellant also intertwines a Fed. R. Civ. P. 60(b)(3) issue within his discussion of Brief Issue 17. *See* ECF No. 21 at 47-48. As Appellee points out, because Appellant never filed a Rule 60(b) motion with the Bankruptcy Court, any issue concerning Rule 60(b) is not properly before this Court. *See* ECF No. 24 at 46.

Court from determining whether the Bankruptcy Court committed a reversible error in issuing its Contempt Order. *Id*. at 11. In addition, it recites Dr. Smith's compliance failures that led to its motion for contempt and to issuance of the Contempt Order. *Id*. at 17-20. And it expressly argues that "the Bankruptcy Court did not err in entering the Contempt Order or the Judgment, and Appellant has not met his burden of showing any reversible error." *Id*. at 23.

Naturally, Appellee's arguments do not dictate the appropriate scope of this appeal. But, given such consideration by Appellee, this Court will analyze whether the Bankruptcy Court erred in issuing the Contempt Order under well-established law concerning imposing case-closing sanctions. Once one traverses through the maze of jurisdictional and fraud-on-the-court arguments of Dr. Smith the facts are straight forward and simple. Moreover, Medlegal will suffer no prejudice from the Court directly addressing the propriety of the case-ending sanction. In doing so, however, the Court expressly recognizes that given the issues raised by Appellant in his original statement of issues, the Fifth Circuit may deem such error forfeited even though this Court has considered it. *See Highland Cap. Mgmt. Fund Advisors, LP v. Highland Cap. Mgmt., LP (In re Highland Cap. Mgmt., LP)*, 57 F.4th 494, 499 (5th Cir. 2023).

Medlegal moved to hold Dr. Smith in contempt for his failures to comply with court orders and requested sanctions under Fed. R. Civ. P. 37(b)(2) and (d). *See* R. 100-07. It premised the motion on the following failures of Dr. Smith: (1) to make initial disclosures as required by the Bankruptcy Court's scheduling order; (2) to comply with the Bankruptcy Court's First, Second, and Third Compel Order (Docs. 15, 39, and 40 in AP); and (3) to comply with the Bankruptcy Court's First Contempt Order (Doc. 38 in AP). *See* R. 100-02. As relief for these transgressions, Medlegal sought an order striking Dr. Smith's answer and entering a default judgment. *See* R. at 103.

In general, "sanctions are reviewed for abuse of discretion." *Calsep A/S v. Dabral*, 84 F.4th 304, 310 (5th Cir. 2023). Appellate courts "review the 'factual findings underpinning [a] sanction

order for clear order." *Id.* (quoting *Law Funder, LLC v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019)). The Bankruptcy Court imposed sanctions under Fed. R. Civ. P. 37(b)(2)(A)(iii) and (vi) and (d)(3).

Rule 37(b)(2)(A) provides discretionary authority for courts to sanction litigants for not obeying a discovery order. Available sanctions include "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii) and (vi). These same sanctions are available when a party fails to attend his own deposition. *See* Fed. R. Civ. P. 37(d)(3). Courts have "broad discretion in fashioning" sanctions under Rule 37. *See Calsep A/S*, 84 F.4th at 310.

Despite the court's broad discretion, Fifth Circuit "'caselaw imposes a heighted standard' for entering 'litigation-ending sanctions' under the Federal Rules of Civil Procedure." *Id.* at 311 (quoting *Law Funder*, 924 F.3d at 758). Before imposing a case-ending sanction through Rule 37, courts, under this heightened standard,

> must make four additional findings beyond those required by the Rule itself: (1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation substantially preju-diced the opposing party; and (4) a lesser sanction would not substantially achieve the desired deterrent effect.

*Id.* (omitting internal quotation marks and citations).

The Bankruptcy Court granted Medlegal's motion for sanctions "for reasons stated on the record." R. 151. It stated its findings on the record. *See* ECF No. 2-19 at 17-18 (Docket Sheet for AP 5082). This Court's review is thus hindered because Dr. Smith, as Appellant, has not desig-nated the transcript of that hearing for review. Although in the preceding section, this Court de-clined to strike Appellant's brief or summarily affirm the judgment of the Bankruptcy Court due to this failure, the failure does preclude this Court from conducting a full review of the reasoning of the Bankruptcy Court for its sanctions, including whether the Bankruptcy Court complied with the procedural requirements of the heightened standard before striking the answer and entering default judgment. As it is Appellant's burden to show reversible error, this failure essentially

dooms his appeal of the Contempt Order.

Moreover, from the record before this Court, Dr. Smith unquestionably failed to appear for his own deposition and disobeyed orders of the Bankruptcy Court regarding discovery thus prompting sanctions under Rule 37(b)(2) and (d)(3). There is no error by the Bankruptcy Court in finding that Dr. Smith committed sanctionable offenses. Because Dr. Smith proceeds without counsel here and in the underlying bankruptcy case, there is likewise no doubt that the client is responsible for these violations.

The record also fully supports finding that Dr. Smith committed the discovery violations willfully or in bad faith. He ignored and intentionally disregarded orders of the Bankruptcy Court directing him to provide discovery and to appear for his deposition. From his filed objection to disclosures and email correspondence, it is clear that Dr. Smith simply had no intent to cooperate with discovery while his perceived standing issue was unresolved. And even after the Bankruptcy Court denied his motion to dismiss, he made no effort to comply with discovery or orders of the Bankruptcy Court. His failures to provide discovery delayed the case from progressing. As the Fifth Circuit has recognized, "discovery delays are serious, especially when they are part of a pattern." *Calsep A/S*, 84 F.4th at 313. Similarly, "a pattern of misconduct doesn't help." *Id*. at 314. A pattern of delay and misconduct as reflected in the appellate record of this case supports finding that Dr. Smith willfully or in bad faith committed the discovery violations.

By completely failing to make initial disclosures, respond to written discovery, or appear for his own deposition, Dr. Smith has unequivocally prejudiced Medlegal from pursuing its claims against him. In general, courts "find prejudice when a party's case-in-chief is seriously and gravely impacted." *Id*. Dr. Smith refused to engage in discovery or follow court orders because he mistakenly viewed Medlegal as lacking standing to pursue its claims. Even after the Bankruptcy Court ruled against him on that issue, he took no steps to participate in discovery or comply with the court orders. Parties cannot stonewall discovery simply because they believe they have a motion

to dismiss that has merit. This is especially true for Dr. Smith who has unsuccessfully litigated the same or similar standing issue numerous times throughout various bankruptcy cases and appeals. *See Smith v. Medlegal Solutions, Inc. (In re Smith)*, No. SA-21-CV-1047-JKP, 2023 WL 2544339, at *1-11 (W.D. Tex. Mar. 16, 2023) (previously addressing bankruptcy appeal from AP 5082). While considering a request for sanctions within the appellate brief in that prior appeal, the Court stated:

> And while this Court is nearly certain that some court has explained or tried to explain the standing concept to Dr. Smith either in his bankruptcy cases or during one of his numerous bankruptcy appeals, no one has pointed to any such explanation. Such an explanation might support a finding that Dr. Smith is acting intentionally and perhaps with some malice, rather than simply misapprehending an often-misunderstood legal principle.

*Id*. at *9. Further, as early as June 10, 2020, the Bankruptcy Court had characterized Dr. Smith's standing argument as "contrived" in the context of BK 50578. *See* ECF No. 2-14 at 177; ECF No. 3-3 at 9 (same hearing transcript). Under the record before it, this Court has no difficulty in finding that Medlegal suffered prejudice sufficient for imposition of the case-ending sanction imposed in this case.

As for lesser sanctions, the Contempt Order does not itself indicate whether the Bankruptcy Court considered lesser sanctions. But again, the Bankruptcy Court granted the motion for reasons stated on the hearing record—a transcript that Dr. Smith, as Appellant, did not provide for review. Still, the record does reflect that, prior to the case-ending sanction of default judgment, the Bankruptcy Court imposed attorney fees regarding the first motion to compel, and such sanction had no effect on Dr. Smith's compliance. Each other order granting a motion to compel also indicated that the Bankruptcy Court would consider imposition of fees and costs and the Bankruptcy Court ultimately imposed such fees and costs at the same time that it issued the Contempt Order appealed in this case. It thus appears that the Bankruptcy Court did consider (and in fact imposed) lesser sanctions.

Further, Medlegal specifically argued that lesser sanctions were inappropriate under the circumstances. *See* R. 105-06. It argued that Dr. Smith's "attitude of indifference will not be changed or persuaded by a slap on the wrist" and that "[t]he sheer number of instances of contempt and [Dr. Smith's] unflappable position that he should not have to answer discovery until certain threshold issues are resolved will not be changed with a minor sanction award." R. 106. Medlegal recognized that the Bankruptcy Court had already imposed costs and fees to no effect and further noted that, in his individual bankruptcy action, Dr. Smith did not list any non-exempt assets of value, thus exhibiting an inability to pay any monetary sanction." *Id*. Although the Contempt Order of the Bankruptcy Court does not expressly state that the court considered these matters, this Court will not presume that it failed to consider lesser sanctions. It is the Appellant's burden to present an adequate appellate record and Dr. Smith has failed to present the transcript of the January 25, 2022 hearing.[6]

Moreover, some cases warrant the imposition of a case-ending sanction even when the court has not considered specific alternative sanctions. *See Calsep A/S*, 84 F.4th at 316. The Fifth Circuit has "not required deep consideration of alternatives when it's plain that a lesser sanction wouldn't have done the trick." *Id*. This appears to be such a case. Dr. Smith unquestionably violated multiple court orders. His nonparticipation in discovery prevented the case against him from proceeding. His level of misconduct does not require great consideration of lesser sanctions. *See id*. Additionally, providing "a second or third chance is itself a lenient sanction, which when met with further default, may justify imposition of the ultimate sanction of dismissal with prejudice." *Id*. at 317 (cleaned up and omitting citation). In short, "a detailed consideration of lesser sanctions

---

[6] Appellant did designate supplemental documents for appeal, including the transcript of the January 25, 2022 hearing. *See* ECF No. 28. But his September 9, 2022 attempt to supplement came well after the July 14, 2022 deadline for filing such a supplement. *See* ECF No. 19. Due to this untimeliness, the Court stated that it "will not consider the supplemental items he sought to designate untimely." *See* ECF No. 38 at 2. Even though Appellant untimely presented the transcript, the Court notes that it shows that the Bankruptcy Court indeed did consider lesser sanctions and found that they had been ineffectual; thus, warranting entry of default judgment as a sanction. *See* ECF No. 28-3 at 68-69.

isn't required where, as here, a court appropriately concludes that a party's act was particularly egregious, part of a pattern of repeated violations, and—as evidenced by the wrongdoer's conduct—there's some indication that lesser sanctions would be futile or ignored." *Id*. That is precisely the circumstances faced by the Bankruptcy Court here.

In light of the record provided in this appeal, this Court finds that the Bankruptcy Court did not abuse its discretion in issuing the appealed Contempt Order and imposing the case-ending sanction of default judgment. Appellant has not shown that the Bankruptcy Court applied any improper standard, followed any improper procedure, or rested its decision on clearly erroneous findings of fact. While it is uncertain whether the Bankruptcy Court ever warned Dr. Smith about the prospect of a case-ending sanction should he not comply with court orders, the circumstances justify the sanction with or without prior warning.[7] Dr. Smith is a well-educated litigant who has prosecuted numerous appeals of bankruptcy matters pro se and is undoubtedly aware of the prospect of various sanctions, including case-ending sanctions, for litigation abuses. "A default judgment is sometimes the only practical solution." *Id*. The question here is not whether this Court would have imposed the case-ending sanction, but only whether the Bankruptcy Court abused its discretion by doing so. *Id*. On the record before it, this Court finds no such abuse of discretion.

Because the Bankruptcy Court did not abuse its discretion in imposing the case-ending sanction of default judgment, the court necessarily did not err in entering a final judgment against Dr. Smith. And Dr. Smith has not preserved any issue that warrants reversing the final judgment against him. In Issue 12, Appellant questions whether the Bankruptcy Court erred with its monetary judgment against him, as an LLC member, without producing evidence of any pecuniary or contractual obligation to Appellee. But Appellee pled the amount of damages known to it at the

---

[7] As reflected in the untimely transcript presented to this Court, the Bankruptcy Court did recognize that Dr. Smith had "been warned in the past through prior motions for expenses and for contempt," yet he continued to resist discovery on grounds of standing. *See* ECF No. 28-3 at 68.

time it commenced AP 5082. *See* ECF No. 2-14 at 11-13. Further, after considering evidence presented at the hearing on the contempt motion, including reconciliation reports as to receivables, *see* R. 146-47, the Bankruptcy Court entered judgment against Dr. Smith for approximately $1.4 million, *see* R. 148-49.

On the record presented by Appellant, this Court cannot find that the Bankruptcy Court erred in issuing a default judgment for about $1.4 million against Dr. Smith. Not only did Medlegal present an alter ego theory in AP 5082, but its claims transcend contractual and pecuniary interests.

## VIII. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's February 22, 2022 Contempt Order and its Final Judgment. It will issue its own Final Judgment by separate filing so as to terminate this consolidated appeal.

One final matter deserves brief comment. In two prior bankruptcy appeals in AP 5082, the Court denied requests for sanctions under Fed. R. Bankr. P. 8020(a) and noted that it might revisit the issue in those cases after review of the appeal in this consolidated action. *See Smith v. Medlegal Solutions, Inc. (In re Smith)*, No. SA-21-CV-1047-JKP, 2023 WL 2544339, at *11 (W.D. Tex. Mar. 16, 2023); *Smith v. Medlegal Solutions, Inc. (In re Smith)*, No. SA-21-CV-1216-JKP, unpub. ord. at 4 (W.D. Tex. Mar. 16, 2023). Because the parties are the same in this appeal, the Court herein states that it finds no adequate reason to revisit the sanction issue in those cases.

**SIGNED this 16th day of May 2024.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**